```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────
FIRST AMERICAN INTERNATIONAL BANK,

                    Plaintiff,           10 Civ. 3775 (JGK)

        - against -                      OPINION AND ORDER

THE COMMUNITY'S BANK,

                    Defendant.
────────────────────────────────────
```

JOHN G. KOELTL, District Judge:

The plaintiff, First American International Bank ("FAIB"), entered into agreements with the defendant, The Community's Bank ("TCB"), that required TCB to share 50% of a federal community development award if doing so was "permitted under all applicable laws, rules and regulations." TCB refused to pay FAIB, and FAIB sued for breach of contract. TCB now moves to dismiss FAIB's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted or under Rule 19(b) for failure to join an indispensable party.

I.

The following facts are undisputed, unless otherwise noted.

Pursuant to 12 U.S.C. § 4713, the federal government administers Bank Enterprise Awards ("BEA Awards") through the Community Development Financial Institutions Fund ("CDFIF"), a

branch of the U.S. Department of the Treasury. BEA Awards are intended "to provide financial assistance to Community Development Financial Institutions, and provide an incentive for insured depository institutions to increase their activities in Distressed Communities." 12 C.F.R. § 1806.100. The maximum award that any single institution can receive in a single year is capped by CDFIF; for 2009, the cap was set at $700,000. (Ltr. of Donna Gambrell Sept. 29, 2010 ("2d CDFIF Ltr.").)

FAIB held loans that qualified it for an award beyond the $700,000 cap. On December 30, 2008, FAIB and TCB entered into four Loan Participation Agreements by which TCB would participate in four of FAIB's BEA-qualifying loans (the "Loans"). (Compl. ¶¶ 3-4.) They simultaneously entered into four separate agreements (the "Letter Agreements") in which TCB agreed (1) to apply for a BEA Award based upon the Loans and (2) to share 50% of a BEA Award with FAIB if one were granted, so long as "said application and award sharing is permitted under all applicable laws, rules and regulations." (Compl. ¶¶ 5-6; Aff. of Orville G. Aarons ("Aarons Aff.") Ex. B, C.) CDFIF granted FAIB an award of $700,000, the maximum available for 2009. (2d CDFIF Ltr.) CDFIF also granted TCB an award of $432,000 (the "Award") pursuant to an Award Agreement, which TCB received on or about September 30, 2009. (Compl. ¶¶ 6-7.) TCB

did not share any of the Award with FAIB, and communicated to FAIB that it would not do so. (Id. ¶¶ 8-10.)

On March 18, 2010, FAIB sued TCB in New York Supreme Court, seeking $216,000 in damages for TCB's alleged breach of the Letter Agreements. (Id. ¶¶ 10-11.) TCB removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441(a) and (b), and 1446.

## II.

TCB moves to dismiss FAIB's complaint for failure to state a claim. TCB argues that the Letter Agreements required TCB to share the Award with FAIB only if doing so was "permitted under all applicable laws, rules and regulations." (Aarons Aff. Ex. C.) TCB argues that federal regulations require a BEA Award recipient to comply with any terms and conditions established by CDFIF, see 12 C.F.R. § 1806.300(a), and that the Award Agreement prohibits it from "assign[ing], pledg[ing] or otherwise transfer[ring] any rights, benefits or responsibilities . . . under this Award Agreement without the prior written consent of [CDFIF]." (Aarons Aff. Ex. E ¶ 8.3.) Because it has not been able to obtain written consent, TCB argues, it could not transfer any portion of the Award to FAIB without violating the applicable rules and regulations, and thus is not required by the Letter Agreements to do so.

3

Alternatively, TCB argues, CDFIF is an indispensable party, and the suit should be dismissed for non-joinder of CDFIF.

FAIB argues in response that the applicable laws, rules, and regulations do not prohibit TCB from sharing a portion of the Award, drawing a distinction between "sharing" the proceeds of the Award and "transferring" the right to receive the Award or the accompanying obligations. Alternatively, it argues, if the Award Agreement requires TCB to obtain written consent before sharing the Award with FAIB, then TCB breached the implied covenant of good faith and fair dealing by failing to seek CDFIF's written consent in good faith. It also argues that CDFIF is not an indispensable party and that, if it were, FAIB could amend its complaint to join CDFIF.

## III.

As TCB argues, it is required by applicable regulations to comply with the terms and conditions of the Award Agreement. See 12 C.F.R. § 1806.300(a). The only term or condition that either party suggests is relevant is Paragraph 8.3 of the Award Agreement, which requires prior written consent from CDFIF before an awardee may "assign, pledge or otherwise transfer any rights, benefits or responsibilities . . . under this Award Agreement." (Aarons Aff. Ex. E ¶ 8.3.)

4

Since the initiation of this lawsuit, the parties have corresponded with CDFIF on at least four occasions in an attempt to ascertain whether Paragraph 8.3 bars TCB from sharing its Award with FAIB.

First, on March 25, 2010, TCB sent a letter to CDFIF seeking "confirm[ation] that it is not permissible to share a BEA award" under the circumstances of TCB's Award and the Letter Agreements. (Aarons Aff. Ex. H.) TCB expressed its understanding that CDFIF "limited its consent to the transfer of an award by an awardee to situations involving the merger, acquisition, or the purchase of assets of a financial institution" and that it had "never consented to any such assignment or sharing of an award by an awardee with any non-affiliated third party for any other reason." (Id.)

CDFIF responded by letter on April 19, 2010. It stated that "there is no general prohibition against transferring an award to an unaffiliated third party; however, such transfers do require prior [CDFIF] approval." (Id. Ex. I ("1st CDFIF Ltr.").) CDFIF stated that an awardee "must provide the [CDFIF] with sufficient justification as to why a transfer should be approved" and that "[i]n general, such justification must demonstrate, to the satisfaction of [CDFIF], that the Awardee is unable to fulfill its obligations under the Award Agreement unless such transfer is made." (Id.) CDFIF then evaluated TCB's

5

March 25 letter as a request to approve a transfer and denied that request for its "fail[ure] to indicate that the Awardee is unable to fulfill its obligations under the Award Agreement unless such transfer is approved" or to provide any other basis for transfer. (Id.) The letter noted that it did not constitute "an interpretation of or opinion on the validity of any agreement between the Awardee and a third party," and that CFDIF would not provide such an interpretation or opinion. (Id.)

Second, because FAIB maintained that TCB had "colored the facts" in its letter to CFDIF (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss 11), in response to the Court's urging, the parties sent a joint letter to CDFIF on September 3, 2010, requesting further guidance from CDFIF. CDFIF responded by letter, stating:

> It is the policy of [CDFIF] to allow the transfer of BEA Program awards only in the event of merger, acquisition, or other operation of law. To allow otherwise would usurp the BEA Program's competitive process, namely by allowing an organization that did not compete in the application process to receive an award or, as is the case with FAIB, allowing an organization that did participate in the competitive process to receive award funds in excess of the 2009 maximum award amount.
>
> Please note that this determination does not constitute an interpretation of or opinion on the validity of any agreement between the Awardee and a third party, nor will [CDFIF] provide such interpretation or opinion.

(2d CDFIF Ltr.)

6

Third, because the parties disagreed regarding the interpretation of the Second CDFIF Letter, they held a joint telephone call with CDFIF on November 2, 2010. No transcript of this call has been provided to the Court. The parties present conflicting accounts of the call. According to TCB, CDFIF "affirmed the decisions it rendered" in its two letters, and stated that "it will not opine on the validity of [award-sharing agreements] and . . . cannot 'approve a transfer of the award' from TCB to FAIB." (TCB Ltr. Br. Nov. 3, 2010 at 4.) TCB noted that CDFIF stated "that the agency does not currently 'track' award sharing between participant banks." (Id. at 5.)

In FAIB's account, CDFIF "clearly and unequivocally stated that there was nothing prohibiting FAIB and TCB from entering into or consummating the agreement that is at issue in this case." (FAIB Ltr. Br. Nov. 3, 2010 at 2.) According to FAIB, "[t]he CDFIF representatives stated that the prohibition on award transfer related to transfers prior to the payment of an award by CDFIF and that a post-award agreement did not constitute a transfer of an award in violation of their rules." (Id.) For the purposes of the Award Agreement, FAIB claims, "transferring refers only to a party anticipating an award transferring its right to receive the award from CDFIF" and "[o]nce the award is paid to the recipient, . . . the CDFIF representatives stated, 'other activities they [the other

7

parties] engage in is not a concern of the fund.'" (Id.) FAIB said that CDFIF "specifically stated that there was NO tracing of funds to track what happens to the actual dollars representing the award" and that "'should two parties engage in a third party agreement, [CDFIF does] not get involved.'" (Id.) Finally, "[i]n response to [FAIB]'s inquiry as to whether there was any law, rule or regulation prohibiting the sharing of funds between third parties, CDFIF counsel's answer was a simple 'no.'" (Id.)

Fourth, because of the continuing dispute between the parties, FAIB emailed CDFIF to confirm its understanding of CDFIF's position. FAIB stated:

> The issue is whether [TCB] is allowed to agree to pay [FAIB] an amount equal to one-half of its 2009 Bank Enterprise Award, after it receives the award. I understand from what [CDFIF] said that [TCB] is not prohibited from making the payment, so long as it does not assign its obligations under its award agreement. In response to a specific question as to whether there is any law or regulation prohibiting such payment, you answered in the negative.

(FAIB Ltr. Br. Nov. 16, 2010.) CDFIF responded succinctly: "Yes, your understanding is correct." (Id.)

**IV.**

A.

TCB first argues that FAIB's complaint should be dismissed because it fails to state a claim on which relief can be granted. See Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true and all reasonable inferences must be drawn in the plaintiffs' favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995). The Court should not dismiss the complaint if the plaintiffs have stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.; see also SEC v. Rorech, 673 F. Supp. 2d 217, 221 (S.D.N.Y. 2009).

In deciding the motion, the Court may consider documents that are referenced in the complaint, documents that the

plaintiffs relied on in bringing suit and that either are in the plaintiffs' possession or were known to the plaintiffs when they brought suit, or matters of which judicial notice may be taken. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).[1]

B.

FAIB's complaint alleges that TCB breached the Letter Agreements. FAIB argues that it has stated a claim on either of two theories: first, because Paragraph 8.3 does not require that TCB obtains CDFIF's consent to comply with the Letter Agreements; and second, because TCB has failed to seek CDFIF's consent in good faith if that consent is required.

TCB's motion to dismiss is denied. First, the Award Agreement is ambiguous as to whether TCB is permitted to pay FAIB pursuant to the Letter Agreements. Although the parties seem to treat the Award Agreement and CDFIF's interpretations thereof as administrative actions, the Award Agreement is a contract, and as such is interpreted according to principles of contract law. See Maniolos v. United States, No. 10 Civ. 4467, 2010 WL 3853383, at *8 (S.D.N.Y. Oct. 4, 2010) ("[C]ontracts

---

[1] Neither party has objected to the consideration of the parties' post-filing correspondence with CDFIF, nor suggested that it cannot be considered without converting the motion to dismiss into one for summary judgment.

10

with the government are governed by federal common law . . . ." (quoting Up State Fed. Credit Union v. Walker, 198 F.3d 372, 375 n.4 (2d Cir. 1999)). The Award Agreement states that it is governed by federal law to the extent that federal law is applicable, and is otherwise governed by the law of the state in which the Awardee is incorporated. (Aarons Aff. Ex. E. ¶ 8.6.) Although the parties have not discussed the rules of contract interpretation that govern the Award Agreement, federal contract law comprises "generally accepted principles of contract law." Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 845 (2d Cir. 1987); see also Am. Home Assur. Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 316 (2d Cir. 2006) (looking to state law in applying federal contract law). TCB is a Connecticut corporation (Compl. ¶ 2) and thus Connecticut law governs the interpretation of the Award Agreement between TCB and CDFIF to the extent federal law does not apply. For this reason, the Court will look to Connecticut law as a guide to the applicable principles of contract law for the purposes of this order.[2]

Under Connecticut contract law, "[a] contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of

---

[2] The principles of Connecticut contract law discussed below parallel rules of New York and general Federal law.

the situation of the parties and the circumstances connected with the transaction." Issler v. Issler, 737 A.2d 383, 389 (Conn. 1999) (internal quotation marks omitted). "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." Id. (internal quotation marks omitted). The determination of intent is a question of fact in the absence of "definitive contract language." Id. (internal quotation marks omitted). See also Cyr v. Reliance Standard Life Ins. Co., 525 F. Supp. 2d 1165, 1179-80 (C.D. Cal. 2007), rehr'g en banc granted, --- F.3d ----, 2010 WL 4969026 (9th Cir. Dec. 2, 2010) ("Applying federal contract law, 'courts should first look to explicit language of the agreement to determine, if possible, the clear intent of the parties.'" (quoting Gilliam v. Nev. Power Co., 488 F.3d 1189, 1194 (9th Cir. 2007)).

Applying these principles to the evidence before the Court, Paragraph 8.3 is ambiguous. Paragraph 8.3 forbids an Awardee from "assign[ing], pledg[ing] or otherwise transfer[ring] any rights, benefits or responsibilities . . . under this Award Agreement without the prior written consent of [CDFIF]." (Aarons Aff. Ex. E ¶ 8.3.) The prohibition on transferring rights, benefits, or responsibilities under the Award Agreement could be read to bar a payment from one bank to another that is triggered by receipt of funds from CDFIF, as TCB proposes, or it could be

read to bar only arrangements that transfer the right to receive those funds or the obligations taken on by an awardee, as FAIB proposes. Neither the plain language of the agreement, nor the apparently conflicting interpretations provided by CDFIF since the agreement, provide a definitive guide to the parties' intent in entering this contract. Thus, it cannot be determined at this stage whether the Award Agreement barred an arrangement such as that in the Letter Agreements.[3]

Furthermore, FAIB has adequately stated a claim of breach based on a violation of the implied covenant of good faith and fair dealing. The parties agree that the Letter Agreements are governed by New York law. (Def.'s Mem. of Law in Supp. of its Mot. to Dismiss 9-10; Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss 11.) "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance," which "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." 511 W. 232 Owners Corp. v. Jennifer Realty Co., 773 N.E.2d 496, 500 (N.Y. 2002) (internal quotation marks omitted). Although TCB argues that the complaint does not contain a claim for violating the implied covenant of good faith and fair dealing, "an alleged

---

[3] It is worth noting, however, that CDFIF's most recent guidance in its email to FAIB, which is the most direct statement of CDFIF's interpretation of the contract, strongly supports FAIB's reading.

13

breach of the implied covenant of good faith and fair dealing is part of a general breach of contract claim," Woodhams v. Allstate Fire & Cas. Co, No. 10 Civ. 441, 2010 WL 3858440, at *10 (S.D.N.Y. Sept. 28, 2010), and therefore need not be pleaded separately.

FAIB has plainly stated a claim for violation of the implied covenant of good faith and fair dealing that is sufficient to survive a motion to dismiss. The complaint, particularly when read together with the parties' post-filing correspondence, allows the reasonable inference that TCB has sought to obtain CDFIF's denial of consent in an attempt to relieve TCB from its obligation under the Letter Agreements, which would "have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." 511 W. 232 Owners Corp., 773 N.E.2d at 500 (internal quotation marks omitted).

Accordingly, TCB's motion to dismiss for failure to state a claim is denied.

## V.

Alternatively, TCB argues that the case should be dismissed because CDFIF, a purportedly indispensable party, is not joined in this action.

Federal Rule of Civil Procedure 19 sets up a two-prong test for determining whether an action must be dismissed for failure to join an indispensable party. See Viacom Int'l, Inc. v. Kearney, 212 F.3d 721, 724 (2d Cir. 2000); Associated Dry Goods Corp. v. Towers Fin. Corp., 920 F.2d 1121, 1123 (2d Cir. 1990). The first prong of the test, embodied in Rule 19(a), determines whether a party is required to be joined if feasible. Associated Dry Goods, 920 F.2d at 1123. "Unless Rule 19(a)'s threshold standard is met, the court need not consider whether dismissal under Rule 19(b) is warranted." Id. If the court determines that a party is required to be joined if feasible under Rule 19(a) but cannot be made a party, it then proceeds to the second step in the analysis and, applying Rule 19(b), inquires whether "in equity and good conscience, the action should proceed in the necessary party's absence." Id. at 1124.

TCB has not shown either that CFDIF is required to be joined, or that it cannot be made a party. Under Rule 19(a), a person must be joined if feasible if

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect that interest; or

15

> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

The first and second types of requirement are not present in this case. At best, TCB can invoke the third type of requirement by claiming that it might be subject to a second lawsuit by CDFIF if it is decided in this case that the Award Agreement permits it to pay FAIB, and CDFIF disagrees.[4] However, TCB has not shown a "substantial risk" of inconsistent obligations should it be found that the Award Agreement should be construed to permit sharing. CDFIF's statements are compatible with the conclusion that a transfer of the proceeds of a BEA Award is of no concern to CDFIF. CDFIF's most recent statement strongly supports this interpretation. Moreover, TCB concedes that CDFIF stated that it "does not currently 'track' award sharing between participant banks." (TCB Ltr. Br. Nov. 3, 2010, at 5; see also FAIB Ltr. Br. Nov. 3, 2010 ("[CDFIF] said 'should two parties engage in a third party agreement, we [CDFIF] do not get involved.'").) Accordingly, there has been no showing of a "substantial risk" of CDFIF suing TCB, sanctioning it, or in any other way subjecting TCB to inconsistent obligations. Therefore, dismissal is not warranted. See Associated Dry Goods, 920 F.2d at 1123.

---

[4] Even then, CDFIF would seem to have no interest in any disposition between FAIB and TCB if it were found that TCB had violated the Letter Agreements' implied covenants of good faith and fair dealing.

16

Additionally, TCB has not shown or even argued that CDFIF cannot be joined in this action. This presents an independent reason to deny its motion. <u>See</u> Fed. R. Civ. P. 19(b); <u>see also</u> <u>Associated Dry Goods</u>, 920 F.2d at 1125 (stating that "the parties actually before the court are <u>obliged to pursue</u> any avenues for eliminating the threat of prejudice" before a case can be dismissed (internal quotation marks omitted)). Accordingly, TCB's motion to dismiss for failure to join an indispensable party is denied.

## CONCLUSION

TCB's motion to dismiss is **denied**. The Clerk is directed to close Docket No. 6.

**SO ORDERED.**

**Dated:    New York, New York
           January   , 2011**

                                                                      _____
                                                                        **John G. Koeltl
           United States District Judge**

Additionally, TCB has not shown or even argued that CDFIF cannot be joined in this action. This presents an independent reason to deny its motion. See Fed. R. Civ. P. 19(b); see also Associated Dry Goods, 920 F.2d at 1125 (stating that "the parties actually before the court are obliged to pursue any avenues for eliminating the threat of prejudice" before a case can be dismissed (internal quotation marks omitted)). Accordingly, TCB's motion to dismiss for failure to join an indispensable party is denied.

## CONCLUSION

TCB's motion to dismiss is **denied**. The Clerk is directed to close Docket No. 6.

**SO ORDERED.**

Dated: New York, New York
January 10, 2011

John G. Koeltl
United States District Judge