UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------x
FIRST AMERICAN INTERNATIONAL BANK  :   10 CV 3775 (PAE)

          Plaintiff,

     v.   :   **AFFIDAVIT OF**
                          **ORVILLE G. AARONS**

THE COMMUNITY'S BANK

          Defendant.
---------------------------------------x

ORVILLE G. AARONS, being duly sworn, deposes and says:

1. I am the Chief Lending Officer and Executive Vice President of The Community's Bank ("TCB"), the sole defendant in this proceeding, and I respectfully submit this Affidavit in support of The Community's Bank's motion for summary judgment. I make this Affidavit based upon personal knowledge of the facts set forth herein.

2. TCB is a community bank located in Bridgeport, Connecticut. TCB has approximately $36,864,310 in assets and outstanding loans of approximately $20,647,683, as of October 2011. TCB is the only minority-owned bank in the State of Connecticut, and is a certified Community Development Financial Institution ("CDFI"). TCB has been serving the Bridgeport community since February 2001.

3. The National Community Investment Fund ("NCIF"), a private fund which invests in CDFIs around the country, is a shareholder of The Community's Bank's corporate parent. In 2008, Saurabh Narain, an executive at the NCIF, had encouraged TCB to add more participation loans to its loan portfolio. Specifically, Mr. Narain proposed that TCB purchase an interest in various loans booked by First American International Bank ("FAIB").

4. TCB was interested in acquiring participation interests in loans, because the bank had liquidity and cash that it preferred to invest in loans, as interest income from loans is typically higher than interest income from securities. Participating in loans that have already been booked by another lender is a convenient way of investing in loans, because finding suitable borrowers sometimes takes considerable time and money. In exchange, the bank selling the loan participation reduces its risk in the loans, and frees up its assets to be used towards other investments, which may carry less risk or promise a greater return.

5. FAIB indicated early in negotiations its understanding that the proposed loans would qualify for a BEA Award, an award given under the BEA Program. The BEA Program is a federal grant program designed to encourage and support CDFIs that provide services in economically distressed commnunities. Although TCB planned to apply for a BEA Award based on FAIB's proposed loans if it could, TCB's officers and I viewed the potential of an award as speculative. The BEA Program is complex, and we did not want to assume that TCB would receive an award just because we or FAIB believed it would. Moreover, the BEA Program is funded each year as a line-item in the federal budget, and the amount of available funds is impossible to predict with certainty. TCB's loan department, which I manage, intended to (and ultimately did) evaluate each of the loans proposed by FAIB based on their creditworthiness and the financial terms offered by FAIB, not on any potential award monies TCB might receive from a BEA Award.

6. As a result, when FAIB first requested that TCB share any potential BEA Award, TCB was willing to agree to the request as a financial matter. TCB did not know, however, if sharing was permissible under the rules of the CDFI Fund ("CDFIF"). I therefore requested that we put the sharing agreement with FAIB in writing, including the provision that

2

TCB would only share any potential BEA Award if it could do so under all applicable laws, rules, and regulations. I did not consult with legal counsel or the CDFI Fund as to the permissibility of such sharing. Thus, when I signed the four letter agreements with FAIB on TCB's behalf, TCB did not know one way or the other whether such sharing was permissible.

7. TCB and FAIB have no other agreement between them that would require TCB to share any of the bank's assets with FAIB. The only agreements between TCB and FAIB to share money are those set forth in the four letter agreements between the parties.

8. Once The Community's Bank received a 2009 BEA Award, TCB sought to determine whether the bank was permitted under all applicable laws, rules and regulations to share that award with First American International Bank.

9. Shortly after TCB received the award, TCB sought the advice of the law firm Cranmore, Fitzgerald & Meaney, a firm TCB often consults on regulatory matters, as to whether TCB could share its award with First American International Bank.

10. On October 26, 2009, Ms. Anderson, a lawyer at the firm, sent me an opinion letter in response to our inquiry. A true and accurate copy of the firm's invoice to TCB for services rendered in connection with this inquiry is attached hereto as **EXHIBIT A**.

11. Based in part upon the advice our lawyers had given TCB, TCB concluded that it could not share the award with First American International Bank.

12. In late October 2009, I explained to Patrick Yau of First American International Bank that TCB had concluded it could not share the BEA Award and that our determination was based upon the advice of legal counsel. In my subsequent conversations with Mr. Yau, he never challenged the legal determination that the award could not be shared, but he continued to request payment anyway.

3

13. In or about, December 2009, TCB wanted to be sure that its determination was correct. I asked TCB's counsel at Cranmore, Fitzgerald & Meaney to confirm the accuracy of their October 2009 opinion by contacting the CDFIF in writing to learn if the CDFIF disagreed with TCB's conclusion that it could not share the Award proceeds with FAIB. TCB's counsel subsequently contacted the CDFIF in writing to request whether sharing, or transfer, was permissible under the terms and conditions of the 2009 Award Agreement.

14. On April 19, 2010, the CDFIF provided a written response to that inquiry. The Fund evaluated TCB's counsel's inquiry as a request to transfer a portion of the award proceeds, and denied TCB's request to transfer any of its 2009 BEA Award to FAIB. Specifically, the CDFIF advised TCB's counsel that any transfer of the Award required the prior written consent of the CDFIF.

15. Between the time period that TCB's counsel sought guidance from the CDFIF and the CDFIF provided such guidance to TCB, FAIB commenced this civil action.

16. TCB and FAIB do not have any merger or acquisition agreement between themselves. Further, I know of no federal or state law that requires TCB to share its 2009 BEA Award with FAIB.

Sworn to before me this
29th day of November, 2011

_____
Notary Public

_____
Orville G. Aarons

**CYNTHIA A. BARRETT**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES FEB. 28, 2014

4