UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
FIRST AMERICAN INTERNATIONAL BANK,                                      :
                                                                        :    10 Civ. 3775 (PAE)
                                    Plaintiff,                          :
                                                                        :    OPINION & ORDER
            -v-                                                         :
                                                                        :
THE COMMUNITY'S BANK,                                                   :
                                                                        :
                                    Defendant.                          :
                                                                        :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

  Pending before the Court are competing motions for summary judgment in this breach of contract case.  Plaintiff First American International Bank ("FAIB") argues that, under its contract with defendant The Community's Bank ("TCB"), it is entitled to an equal, 50% share of a federal grant award received by TCB; TCB argues the contrary.  Both parties urge that this issue, which turns on a question of contractual interpretation, can be resolved in their favor as a matter of law by the Court, on summary judgment.  For the reasons that follow, both motions for summary judgment are denied.

[1]

**I.      Background**[1]

    **A.  The Parties' Agreement, and TCB's $432,000 Award**

FAIB is a commercial bank, headquartered in New York.  TCB is a smaller, community bank located in Bridgeport, Connecticut.  Each bank is a certified Community Development Financial Institution ("CDFI").  TCB 56.1 ¶¶ 1–2.

This case arises out of an agreement between TCB and FAIB with regard to the potential sharing of certain awards from the Community Development Financial Institutions Fund ("CDFIF" or the "Fund").  The background to that agreement is as follows.

On October 3, 2008, an executive at the National Community Investment Fund ("NCIF"), a private entity which invests in CDFIs and is a shareholder of both parties, contacted executives at FAIB and TCB.  NCIF proposed that FAIB and TCB work together, or "participate," in certain commercial loans that FAIB had already made to its New York business customers.  In effect, the proposal contemplated that TCB would participate in FAIB loans of its choosing, in a specific, but different, percentage for each loan.  Specifically, as to particular loans that FAIB had already made, (1) TCB would purchase a determinate portion of the loan; and (2) when FAIB received payment from a borrower, FAIB would forward a portion of that payment to TCB, keyed to the interest TCB had purchased in that loan.  *Id*. ¶¶ 3–5; Declaration of Peter Harvey in Support of TCB's Motion for Summary Judgment ("Harvey Decl.") (Dkt. 47) Ex. 3.

---

[1] The facts which form the basis of this Opinion are taken from: (1) TCB's 56.1 Statement in Support of its Motion for Summary Judgment (Dkt. 44) ("TCB 56.1"), and attached exhibits; (2) FAIB's 56.1 Statement in Support of its Motion for Summary Judgment (Dkt. 51) ("FAIB 56.1"), and attached exhibits; (3) TCB's 56.1 Counter-Statement (Dkt. 53) ("TCB Counter"); and (4) FAIB's 56.1 Counter-Statement (Dkt. 56) ("FAIB Counter").  References herein to a paragraph in a party's 56.1 statement incorporate by reference the evidentiary materials cited in that paragraph.  Facts in dispute are so noted.  Facts which are not "specifically controverted by a correspondingly numbered paragraph" in a counterstatement are deemed to be admitted, pursuant to S.D.N.Y. Local Civil Rule 56.1.

Ultimately, of the $8 million participation interest proposed by FAIB, TCB agreed to participate in four loans originated by FAIB, and to take on an aggregate $2.4 million of those loans.  TCB 56.1 ¶ 8.

On November 25, 2008, an FAIB official emailed TCB to propose an additional term: "sharing 50/50 [of] any BEA award that [TCB] may be awarded in 2009" with respect to loans made in 2008.  FAIB asked TCB whether it was "agreeable to such terms."  *Id.* ¶ 6; Harvey Decl. Ex. 8.  A "BEA award" denoted a Bank Enterprise Award (an "Award").  Such an Award is a cash grant payable to a CDFI for lending activities in a geographic area deemed by the CDFIF to be distressed.  *Id*.  The CDFIF, in turn, is a regulatory body, organized under the United States Department of the Treasury, whose mission is to "increase economic opportunity and promote community development investments for underserved populations and in distressed communities in the United States."  Community Development Financial Institutions Fund, *Who We Are*, http://www.cdfifund.gov/who_we_are/about_us.asp (last visited Sept. 5, 2012).

TCB was willing to agree to the request as a financial matter.  TCB 56.1 ¶ 10.  Its Board had approved the loan participation without assuming receipt of any BEA Award.  *See* Harvey Decl. Ex. 10 (credit memoranda submitted to TCB Board).  However, TCB did not know at the time whether sharing of an Award would be lawful, and it had not sought a legal opinion as to that point.  TCB 56.1 ¶¶ 7–10; Affidavit of Orville G. Aarons in Support of TCB's Motion for Summary Judgment ("Aarons Aff.") (Dkt. 46) ¶¶ 5–6.  Accordingly, at the request of Orville Aarons, the TCB executive handling the transaction, the parties put their understandings into two distinct sets of documents.  The first set consists of four parallel agreements, dated December 30, 2008, which address the terms under which TCB was to participate in existing loans of FAIB; these agreements do not address a potential BEA Award (the "Loan Participation Agreements").

[3]

*See* Harvey Decl. Ex. 2 (copies of the four Loan Participation Agreements). The second set of agreements, dated the same day, consists of four letter agreements regarding the sharing of any Award that TCB might receive (the "Letter Agreements"). TCB 56.1 ¶ 12; Harvey Decl. Ex. 1 (copies of the four Letter Agreements). Each Letter Agreement reads, in relevant part:

> FAIB and Participant Bank [TCB] acknowledge and agree that (i) Participant Bank intends to apply for an award relating to the Loan, under the 2009 BEA Program and (ii) that the Participants will share any BEA Award with 50% to be received by each Participant, provided it is determined that that [sic] (x) Participant Bank is eligible to apply for a BEA award relating to the Loan, and (y) said application and award sharing is permitted under all applicable laws, rules and regulations.
> . . .
> . . . in the event that the aforesaid sharing of the 2009 BEA Award is contrary to law or regulation, then Participant Bank agrees to share the highest amount permissible up to fifty (50%) percent with FAIB.

Harvey Decl. Ex. 1. Each Letter Agreement was signed by Al Lau, FAIB's president, and Orville Aarons, TCB's executive vice president. *Id.* The Letter Agreements were drafted by FAIB, and appear on FAIB letterhead. *Id.*; TCB 56.1 ¶ 12.

On December 30, 2008, to consummate the purchase of its participation interest in the four loans, TCB wired $2.4 million to FAIB. TCB 56.1 ¶ 16.

In March 2009, TCB applied for a 2009 BEA Award, based on the loans to which the four Loan Participation Agreements applied. TCB 56.1 ¶ 17; Harvey Decl. Ex. 9. On August 20, 2009, CDFIF informed TCB that TCB had been selected to receive an Award, and that receipt of the Award proceeds was conditioned on TCB's agreement to abide by the Award's terms and conditions (the "Award Agreement"). Harvey Decl. Ex. 17; TCB 56.1 ¶¶ 17–18. TCB's Award was for $432,000. TCB 56.1 ¶ 23; FAIB 56.1 ¶ 16.

As relevant here, Paragraph 8.3 of the Award Agreement provided that an Award recipient "may not assign, pledge or otherwise transfer any rights, benefits or responsibilities . . .

under this Award Agreement without the prior written consent of the [CDFIF]." Harvey Decl. Ex. 11, at § 8.3; TCB 56.1 ¶ 19.

Schedule 2-A to TCB's Award, in turn, set out the uses to which the $432,000 Award could be put. It stated that TCB is "required to use [the Award] (or an amount equivalent to the Award amount) for" certain qualified activities, within a particular time frame. Harvey Decl. Ex. 20; FAIB 56.1 ¶ 17. The Award Agreement further provided that Award recipients "must account for and track the use of the Award (or an amount equivalent to the Award amount)" to ensure that the money is being used for qualified activities. Harvey Decl. Ex. 20; FAIB 56.1 ¶ 19. The Award, and the Award Agreement by which a CDFI accepts it, are governed by federal regulations, under which, in the event of "fraud, misrepresentation, or non-compliance with the terms" of the agreement, the Fund "may terminate, reduce, or recapture the award." *See* 12 C.F.R. § 1806.300(b); TCB 56.1 ¶ 20.

In September or October 2009, TCB received its Award, in the amount of $432,000. TCB 56.1 ¶ 23; FAIB Counter ¶ 23.

FAIB received its own 2009 BEA Award, of $700,000. *See* Harvey Decl. Ex. 6. Under the CDFIF's Bank Enterprise Award program, that amount represented the maximum award that FAIB was allowed to receive from CDFIF for 2009. TCB 56.1 ¶ 21.

### B. TCB's Post-Award Communications With CDFIF

On October 26, 2009, in response to a request from TCB, TCB's outside regulatory counsel provided legal advice to TCB as to whether TCB could lawfully share the Award with FAIB. Based on the advice of counsel, TCB determined it was impermissible to share the Award. TCB communicated this to FAIB. TCB 56.1 ¶¶ 25–26.

On March 25, 2010, TCB, through its outside counsel, wrote a letter to CDFIF. TCB asked CDFIF to "confirm that it is not permissible to share [an Award] under" the circumstances presented between TCB and FAIB. Harvey Decl. Ex. 14, at 2 (the "March 25 letter"). As recited in TCB's March 25 letter, those circumstances included that (1) Paragraph 8.3 of the Award Letter prohibits an awardee from assigning, pledging, or transferring rights, benefits, or responsibilities of an award without CDFIF's prior written consent; (2) CDFIF historically had permitted award sharing "to only an award recipient's affiliates or subsidiaries and require specific acts to be taken by such affiliates and subsidiaries"; and (3) FAIB had already been awarded the maximum award for 2009 for which it was eligible. *Id.*

On April 19, 2010, Jodie Harris, associate program manager for CDFIF, whose responsibilities included managing the daily operations of the Award program, responded by letter to TCB's March 25 letter (the "April 19 letter"). Harvey Decl. Ex. 15; FAIB 56.1 ¶ 8. Harris stated that although there is no general prohibition on the transfer of an award to an unaffiliated third party, such a transfer does require CDFIF approval, as stated in Paragraph 8.3. In seeking such approval, Harris stated, the Awardee "must provide [CDFIF] with sufficient justification as to why a transfer should be approved. In general, such justification must demonstrate, to the satisfaction of the [CDFIF], that the Awardee is unable to fulfill its obligations under the Award Agreement unless such transfer is made." *Id.* Harris stated that CDFIF construed TCB's March 25 letter as a request for such approval, and, "[b]ased solely on the information provided," denied it. Harvey Decl. Ex. 15. Harris explained that TCB's March 25 letter "failed to indicate that [TCB] is unable to fulfill its obligations under the Award Agreement unless such transfer is approved, nor did it provide any other adequate basis for [the Fund] to approve a transfer of the award." *Id.* Harris added that CDFIF was not interpreting or

expressing an opinion on the agreement between TCB and FAIB, and that CDFIF would not do so. *Id.*

### C. FAIB's Lawsuit and Subsequent Events

On March 31, 2010, FAIB filed its Complaint in this action in New York State Supreme Court (Dkt. 1). The two-page Complaint alleged that TCB had breached its agreement with FAIB by refusing to pay to FAIB its 50% share of the Award, equaling $216,000. TCB timely removed the case to federal court on the basis of diversity jurisdiction (Dkt. 1).

On September 3, 2010, at the suggestion of Hon. John G. Koeltl, to whom this case was then assigned, counsel for FAIB sent a letter to the Fund on behalf of both parties. The letter requested that the Fund clarify whether TCB had been allowed to share its Award with FAIB. TCB 56.1 ¶ 38.

On September 29, 2010, Donna Gambrell, the Fund's director, responded. *See* Harvey Decl. Ex. 16 (the "September 29 letter"). The September 29 letter stated that FAIB had already received a 2009 Award of $700,000—the maximum amount allowable for that year. Gambrell stated that it was CDFIF's policy "to allow the transfer of [Awards] only in the event of merger, acquisition, or other operation of law." *Id*. She added:

> To allow otherwise would usurp the BEA Program's competitive process, namely by allowing an organization that did not compete in the application process to receive an award or, as is the case with FAIB, allowing an organization that did participate in the competitive process to receive award funds in excess of the 2009 maximum award amount.

*Id.* Like Harris, Gambrell concluded her letter by noting that her "determination does not constitute an interpretation of or an opinion on the validity of any agreement between the Awardee and a third party, nor will the [CDFIF] provide such interpretation or opinion." *Id.*

[7]

On November 12, 2010, Jay L. Hack, outside counsel for FAIB, sent an email to CDFIF's Harris. Hack referenced a phone call the parties had jointly had with Harris 10 days earlier, which arose out of their conflicting interpretations of Gambrell's September 29 letter. Hack's email stated that he sought "to make sure I correctly understand CDFIF's position." Harvey Decl. Ex. 21. Specifically, Hack identified the issue as "whether [TCB] is allowed to agree to pay [FAIB] an amount equal to one-half of its 2009 Bank Enterprise Award, after it receives the award." *Id.* Hack stated that he understood Harris to have stated that TCB "is not prohibited from making the payment, so long as it does not assign its obligations under its award agreement." *Id.* Hack recited that, on the phone call, Harris had stated that there was not any "law or regulation prohibiting such payment." *Id.* In her email response, Harris responded: "Hello Jay, Yes, your understanding is correct." *Id.*

### D. TCB's Motion to Dismiss

On January 11, 2011, Judge Koeltl denied TCB's motion to dismiss, under Federal Rule of Civil Procedure 12(b)(6) (Dkt. 21) ("MTD Decision").[2] TCB had sought dismissal based on the interplay between the provision in the Letter Agreements, which condition its duty to share any BEA Award on a determination that "said application and award sharing is permitted under all applicable laws, rules and regulations," and Paragraph 8.3 of the Award Agreement, which prohibited TCB from "assign[ing], pledg[ing] or otherwise transfer[ring] any rights, benefits or responsibilities under this Award Agreement without the prior written consent of [CDFIF]." TCB argued that, because it had not been able to receive written consent from CDFIF, it could not transfer any portion of the Award to FAIB without violating the applicable rules and regulations, and thus was not required by the Letter Agreements to do so. MTD Decision 3.

---

[2] In the same decision, Judge Koeltl also denied TCB's motion to dismiss under Federal Rule of Civil Procedure 19(b), for failure to join an indispensable party—CDFIF.

In denying the motion to dismiss, Judge Koeltl recited the parties' communications with CDFIF, summarized above, and identified the Award Agreement as the critical document. That Agreement, he stated, is a contract interpreted under principles of contract law, and that under the law applicable to the Award Agreement (Connecticut law), the relevant issue was "'the intent of the parties,'" as determined by "'the language used [in the contract] interpreted in the light of the situation of the parties and the circumstances connected with the transaction.'" *Id.* at 12 (quoting *Issler v. Issler*, 737 A.2d 383, 389 (Conn. 1999) (additional internal quotation marks omitted)). Applying these principles, Judge Koeltl held that it is ambiguous whether Paragraph 8.3 of the Award Agreement permits TCB to pay FAIB pursuant to the Letter Agreements. Judge Koeltl stated that Paragraph 8.3's prohibition on transferring "rights, benefits, or responsibilities" could be read either (as TCB urged) to bar a payment from one bank to another triggered by receipt of funds from CDFIF, or (as FAIB urged) to bar only arrangements that transfer the awardee's right directly to receive those funds from CDFIF, or the awardee's obligations. MTD Decision 13–14. As such, FAIB stated a plausible claim to relief sufficient to survive a motion to dismiss.

Judge Koeltl also held that FAIB had adequately stated a claim for breach based on a violation of the implied covenant of good faith and fair dealing. Under New York law, which governed the Letter Agreements, he noted that parties impliedly pledge not to "do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract," *id*. at 13 (citation omitted), and that the facts alleged by FAIB permitted the reasonable inference that TCB "has sought to obtain CDFIF's *denial* of consent in an attempt to relieve TCB from its obligation under the Letter Agreements." *Id.* at 14.

E. Subsequent Developments

[9]

After denial of the motion to dismiss, the parties engaged in limited fact discovery. This included depositions of the parties, and also of Harris, CDFIF's associate program manager. *See* Declaration of Edward M. Cuddy III in Support of FAIB's Motion for Summary Judgment (Dkt. 50) Ex. 26 (reproducing Harris deposition transcript) ("Harris Dep.").

On November 29, 2011, after the close of discovery, TCB moved for summary judgment (Dkt. 43); on December 13, 2011, FAIB cross-moved for summary judgment (Dkt. 48). The parties' respective replies were filed on December 12, 2011 and December 23, 2011 (Dkts. 52, 55). On January 31, 2012, the Court held oral argument on the motion.

## II.     Discussion

Under New York law, which governs the parties' agreements with each other,[3] an action for breach of contract requires (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages. *Fisher & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011).

This case turns almost entirely on the third element—whether TCB breached its obligations to FAIB under the parties' Letter Agreements with each other. Resolution of that issue, in turn, depends on a question of contract interpretation involving the interplay between the parties' Letter Agreements and the Award Agreement between TCB and CDFIF. The Letter Agreements require the 50/50 sharing "of any BEA Award" between FAIB and TCB, "provided

---

[3] As Judge Koeltl noted, the parties' Loan Participation Agreements state that they are governed by New York law. *See* Harvey Decl. Ex. 2; MTD Decision 13. By contrast, as Judge Koeltl recognized, the Award Agreement between CDFIF and TCB is governed by federal law to the extent that federal law is applicable, and otherwise by the law of the state in which the Awardee is incorporated, and here, TCB is a Connecticut corporation. MTD Decision 11. The Court, accordingly, looks to New York law in determining the elements of the breach of contract cause of action, but to Connecticut law to the extent that the construction of the Award Agreement is at issue. Because New York and Connecticut contract law are parallel on the principles at issue, *see id.* at 11 n.2, the choice of law analysis is not determinative here.

it is determined that . . . said . . . award sharing is permitted under all applicable laws, rules and regulations." CDFIF's Award Agreement, in turn, is an applicable "law[], rule[], [or] regulation" within the meaning of the Letter Agreements: It provides that an Award recipient "may not assign, pledge or otherwise transfer any rights, benefits or responsibilities . . . under this Award Agreement without the prior written consent of the [CDFIF]." The issue presented is whether TCB had a duty, under the Letter Agreements, to share its $432,000 Award with FAIB, and in failing to do so, breached those agreements. In moving for summary judgment, each party argues that its interpretation of the Letter Agreements (as construed in light of the Award Agreement) is the more persuasive.

The standards applicable to these mirror-image motions are familiar. Summary judgment may be granted only where the submissions, taken together, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts "in the light most favorable" to the non-movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over

"facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In the context of disputes over the interpretation of a contract, summary judgment is appropriate "'when the language of the contract provision is wholly unambiguous'" or "'when the language is ambiguous and there is relevant extrinsic evidence, but the extrinsic evidence creates no genuine issue of material fact and permits interpretation of the agreement as a matter of law.'" *Von Biedermann v. Echo Metrix, Inc.*, No. 10-cv-1805, 2012 WL 3260285, at *5 (E.D.N.Y. Aug. 6, 2012) (quoting *Nycal Corp. v. Inoco PLC*, 988 F. Supp. 296, 298–99 (S.D.N.Y. 1997)). "A written agreement that is clear, complete and subject to only one reasonable interpretation must be enforced according to the plain meaning of the language chosen by the contracting parties." *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co.*, No. 09-cv-1796, 2012 WL 3890128, at *5 (S.D.N.Y. Sept. 7, 2012) (internal citation and quotation marks omitted). "'[A] motion for summary judgment may be granted in a contract dispute . . . when the contractual language . . . is found to be wholly unambiguous and to convey a definite meaning.'" *Id.* (quoting *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008)). Further, in the summary judgment context, "[t]he mere assertion of an ambiguity does not suffice to make an issue of fact." *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990). In interpreting a contract under New York law, a court must consider all the provisions to determine the intent of the parties, and "words and phrases . . . should be given their plain meaning." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005).

However, "[s]ummary judgment is generally proper in a contract dispute *only* if the language of the contract is wholly unambiguous." *Compagnie Financiere CIC L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 157 (2d Cir. 2000)

(emphasis added). "The question of whether the language of a contract is ambiguous is a question of law to be decided by the Court." *Id.* at 158. Ambiguity is "defined in terms of whether a reasonably intelligent person viewing the contract objectively could interpret the language in more than one way." *Topps Co.*, 526 F.3d at 68. Where "the moving party's case hinges on ambiguous contract language, summary judgment may be granted only if the ambiguities may be resolved through extrinsic evidence that would support a resolution of these ambiguities in favor of the nonmoving party's case." *Id.* "Although generally interpretation of ambiguous contract language is a question of fact to be resolved by the factfinder, 'the court may resolve ambiguity in contract language as a matter of law if the evidence presented about the parties' intended meaning is so one-sided that no reasonable person could decide the contrary.'" *Compagnie Financiere*, 232 F.3d at 158 (additional internal citation omitted) (quoting *3Com Corp. v. Banco do Brasil, S.A.*, 171 F.3d 739, 746–47 (2d Cir. 1999)).

The Court has given substantial attention to the competing interpretations offered by the parties, including considering the extrinsic evidence adduced in discovery. In so doing, the Court has also been mindful of the representation by counsel for both parties at oral argument that they regarded the issue of contract interpretation presented to be suitable for resolution—in either direction—by the Court at the summary judgment stage. 1/31/12 Tr. 2–3. The Court has, finally, recognized that, given the stakes at issue, a resolution of the decisive question of contract interpretation at this stage would be far more efficient for the parties than deferring that question for trial.

Ultimately, however, the Court has concluded that although both parties make substantial arguments, neither party's interpretation of the meaning of the Letter Agreements—as read in light of the Award Agreement—is unambiguously correct. Put differently, the evidence and

[13]

reasonable inferences favoring each side's position as to whether TCB was obligated to share the $432,000 award with FAIB are not "'so one-sided that no reasonable person could decide the contrary.'" *Compagnie Financiere*, 232 F.3d at 158 (quoting *3Com Corp.*, 171 F.3d at 746–47 (additional internal citation omitted)). Therefore, although both parties have invited a ruling at the summary judgment stage, and although such a ruling would have doubtless been more efficient for the parties, neither party has satisfied the standards for an award of summary judgment. Accordingly, the case must proceed to trial.[4]

There are three independent sources of ambiguity. *First*, the Letter Agreements between the parties are inconclusive as to a critical point: whether the parties contemplated FAIB's sharing the BEA Award itself, or, rather, later receiving downstream from TCB money equating to half of the value of that Award. That distinction matters because there is a substantial argument (made by FAIB and discussed *infra*) that the Award Agreement prohibits sharing of the Award but permits downstream redistribution of the Award's proceeds. In favor of TCB's argument that the parties contemplated sharing the Award itself, the Letter Agreements twice refer explicitly to the parties' sharing *the Award*: They each state that "any 2009 BEA Award received by Participant Bank [TCB] relating to the Loan will be shared" on a 50/50 basis, and refer later to "the aforesaid sharing of the 2009 BEA Award." *See* Harvey Decl. Ex. 2. These provisions preclude finding, on summary judgment, that the Letter Agreements unambiguously favor FAIB. This is particularly so given that "New York follows the well-established *contra proferentem* principle which requires that 'equivocal contract provisions are generally to be

---

[4] Along with its Answer, TCB has demanded a trial by jury (Dkt. 23). Accordingly, having found that a reasonable person could resolve the disputed issue of contract interpretation in either party's favor, the Court cannot usurp the jury's role by balancing the competing arguments and inferences by itself. In the event that the parties waive a jury trial in favor of a bench trial, the Court would then have the authority to do so.

construed against the drafter.'" *McCarthy v. Am. Int'l Grp., Inc.*, 283 F.3d 121, 124 (2d Cir. 2002) (quoting *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 67 (2d Cir. 2000)); *see also Albany Sav. Bank, FSB v. Halpin*, 117 F.3d 669, 674 (2d Cir. 1997) ("New York contract law includes the rule that ambiguities in contract should be construed against the drafter." (citing *Jacobsen v. Sassower*, 66 N.Y.2d 991, 993 (1985))).

On the other hand, elements of the Letter Agreements are more consistent with the thesis—advanced by FAIB—that the parties contemplated TCB's first receiving the Award, and only later dispensing to FAIB money equating to half of the value of the Award. To this end, as noted, the Letter Agreements state that (1) the "Award [will be] received by Participant Bank [TCB]," and (2) if FAIB's receiving the Award "is contrary to law or regulation, then [TCB] agrees to share the highest *amount* permissible up to fifty (50%) percent with FAIB." These provisions of the Letter Agreements, undermining as they do TCB's construction, preclude any finding in favor of TCB on this point at the summary judgment stage.

*Second*, and most significantly, even if the Letter Agreements are read to contemplate TCB's distributing half of the Award's proceeds to FAIB (as opposed to FAIB's sharing the Award itself), Paragraph 8.3 of the Award Agreement is not—as noted by Judge Koeltl— pellucid as to the scope of its prohibition. *See* MTD Decision 13–14. The plain language of Paragraph 8.3 prohibits TCB, without CDFIF's prior written consent, from assigning to FAIB the right to receive from CDFIF a portion of the Award, or, for that matter, transferring to FAIB its responsibilities under the Award Agreement. Less clear on the face of Paragraph 8.3 is whether it also forbids TCB from sharing the Award's proceeds with FAIB. Paragraph 8.3 provides that an Award recipient "may not assign, pledge or otherwise transfer any rights [or] benefits . . . under this Award Agreement" without CDFIF's prior written consent. As Judge Koeltl

[15]

recognized, that language can be read in two ways. *Id.* In support of the narrower reading that it prohibits the recipient only from transferring the right to receive award funds from CDFIF, FAIB fairly notes that Paragraph 8.3 limits its prohibition to the transfer of "rights" or "benefits" *under this Award Agreement*, and argues that a post-award transfer of $216,000 by TCB to FAIB would not occur under that Agreement. However, in support of its broader reading, TCB fairly argues that the Letter Agreements, in breach of Paragraph 8.3, purported to "transfer," in advance of TCB's receipt of the Award, "benefits" that TCB stood to receive under the Award Agreement.

The extrinsic evidence adduced on this issue is insufficient to resolve this ambiguity. This evidence consists of the parties' pre-discovery communications with CDFIF and the deposition of CDFIF's Jodie Harris. CDFIF's pre-discovery statements, reviewed above, offer aid to each side and are substantially offsetting. Harris's testimony, for the most part, although not uniformly, supported FAIB's construction. *See, e.g.*, Harris Dep. 41 (testifying that an Awardee is permitted to give the cash proceeds of a Bank Enterprise Award to another bank without consulting CDFIF). It is, however, far from apparent that Harris, an associate program manager, is empowered to opine authoritatively on CDFIF's construction of Paragraph 8.3. *Cf. Ass'n of Am. R.Rs. v. DOT*, 198 F.3d 944, 948 (D.C. Cir. 1999) (holding that letter and two emails from lower level officials did not amount to authoritative agency interpretation). And, even if she could, the inconsistency between her testimony and the CDFIF's pre-discovery statements calls into question whether her testimony can be treated as reflecting the agency's fair and considered judgment. *See Mullins v. City of New York*, 653 F.3d 104, 106 (2d Cir. 2011) (agency interpretation not due deference when it does not reflect agency's "fair and considered judgment").

Finally, the assembled record reveals plausible policy arguments in each direction, such that such arguments cannot resolve the ambiguity.  *Cf. U.S. v. Brown*, No. 07-cr-109, 2008 WL 2775762, at *2 (S.D.N.Y. July 14, 2008) (motivating policies may resolve ambiguous statutory language, but not where they can be read to support both positions).  Favoring TCB is that FAIB had already received its maximum 2009 Award amount.  As CDFIF director Gambrell noted in her September 29, 2010 letter, "allowing an organization . . . to receive award funds in excess of the 2009 maximum award amount" could "usurp the BEA Program's competitive process."  *See* Harvey Decl. Ex. 16.  For this reason, CDFIF permits such entities to transfer Awards "only in the event of merger, acquisition or other operation of law."  *Id.*  On the other hand, allowing an award recipient to share Award proceeds with a bank such as FAIB that has maxed out on its own annual BEA Awards may provide a worthy incentive to that bank to partner with eligible recipients to make loans to distressed communities.  And, as FAIB notes, CDFIF, in Schedule 2-A to the Award, requires the Awardee to chronicle only that an equivalent amount to the Award amount be used for qualified activities.  Schedule 2-A requires no disclosure as to the destiny of the actual Award proceeds.

*Third* and finally, the Letter Agreements provided that TCB is to share its Award with FAIB "provided it is determined," *inter alia*, that "said application and award sharing is permitted under all applicable laws, rules and regulations."  *See* Harvey Decl. Ex. 1.  The Letter Agreements do not address who—in the absence of agreement among the parties—is to make that determination.  CDFIF has not done so; its pronouncements in response to the parties' inquiries have been inconsistent; and CDFIF's officials have pointedly declined to comment on the agreement between TCB and FAIB.  *See, e.g.*, Harvey Decl. Ex. 15, 16.  The parties appear tacitly to agree that, in these circumstances, this "determin[ation]" is to be made by a court or

jury. However, the parties have not briefed this point. The ambiguity in this provision, too, prevents a grant of summary judgment.

TCB makes a separate argument in favor of summary judgment. It argues that FAIB cannot claim damages, because it has resorted to self-help, confiscating $216,000 which it owed to TCB as part of a payoff of one of the covered loans. *See* TCB Br. 20. For two reasons, that argument is not persuasive. First, unless and until TCB foregoes with finality any potential claim against FAIB for the $216,000 that FAIB allegedly confiscated, TCB may not use FAIB's failure to remit that sum as a basis to claim FAIB has no damages. Otherwise, TCB would be at liberty, having defeated FAIB's lawsuit here on the basis of the $216,000 offset, to then sue TCB to gain the $216,000 it is owed with respect to that loan. Second, FAIB notes that it has not asserted a permanent right to the $216,000 on the loan, but instead, has explained to TCB that it is merely withholding those funds "pending the final resolution of the dispute" regarding BEA Award sharing. *See* Harvey Decl. Ex. 23 (August 3, 2011 letter from FAIB to TCB)*;* 1/31/12 Tr. 23–24 (counsel for FAIB represents that, in the event of a judgment for TCB, FAIB would return the $216,000).[5]

Finally, as part of its claim of contract breach, FAIB argues that TCB breached the implied covenant of good faith and fair dealing. This claim, too, is premature for resolution on summary judgment; it must be resolved by the trier of fact. Further, depending on the construction ultimately given to the underlying contract, FAIB's claim may be rendered moot. *See, e.g.*, *Spread Enters., Inc. v. First Data Merch. Servs. Corp.*, No. 11-cv-4743, 2012 WL 3679319, at *4 (E.D.N.Y. Aug. 22, 2012) ("When the conduct allegedly violating the implied covenant is also the predicate for a claim for breach of covenant of an express provision of the

---

[5] Whether or not FAIB was entitled to withhold such funds for the reason given is not an issue presented by this lawsuit.

underlying contract, the two claims are duplicative." (internal citations and quotation marks omitted)).

## CONCLUSION

For the foregoing reasons, the summary judgment motions of both plaintiff FAIB and defendant TCB are DENIED in their entirety. The Clerk of Court is instructed to terminate the motions pending at docket entry numbers 43 and 48.

The Court has scheduled a conference in this case for October 4, 2012, at 4:00 p.m., to set a trial date. Should the parties both wish to use this conference as a settlement conference, the Court would be receptive to doing so. The parties are directed to jointly notify the Court by letter by October 1, 2012, if they wish to use the conference for this purpose.

SO ORDERED.

*Paul A. Engelmayer*
_____
Paul A. Engelmayer
United States District Judge

Dated: September 21, 2012
       New York, New York